IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES UPTHEGROVE,

                                            OPINION AND ORDER

               Plaintiff,

                                          20-cv-975-bbc

         v.

MMHI MEDICAL DIRECTORS, ANN HEASLETT,
ERIK KNUDSON, MARTHA ROLLI, TYLER LAWS,
ILLICHMAN AND ANGELA JANIS,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff James Upthegrove, who is a patient civilly committed at the Mendota

Mental Health Institute (MMHI) in Madison, Wisconsin, is proceeding on a Fourteenth

Amendment claim that MMHI medical staff took him off Clonazepam, which was

successfully treating his panic disorder and anxiety, without a good reason for doing so.

Before the court are plaintiff's motions for preliminary injunctive relief, in which he requests

an order directing defendants to renew his Clonazepam medication and appoint an outside

psychiatrist to treat him.  Dkt. ##9, 13 and 15.  Defendants have responded, contending

that plaintiff is not entitled to immediate relief because he has failed to show that it is

reasonably likely he will succeed on the merits of his claim, that he is suffering irreparable

harm that outweighs any harm defendants will suffer if the injunction is granted, and that

there is no adequate remedy at law and that an injunction would not harm the public

interest.  For the reasons explained below, I conclude that defendants are correct and that

plaintiff is not entitled to preliminary injunctive relief.

      From the evidence submitted by the parties in connection with their briefing on the

1

motion for preliminary injunction, I find the following facts to be undisputed unless otherwise noted.

## UNDISPUTED FACTS

### A. Benzodiazepines

Benzodiazepines are medications that work to calm or sedate a person by raising the level of the inhibitory neurotransmitter GABA in the brain.  Common benzodiazepines include Lorazepam, Librium and Clonazepam.  They are highly addictive, and their use is normally limited to short-term, as-needed.  A person on benzodiazepines should not mix them with alcohol or other substances that inhibit the central nervous system.  A person with addictions to other substances, such as alcohol, is highly susceptible to addiction to benzodiazepines.

The Wisconsin Drug Utilization Review Newsletter, a Wisconsin Department of Health Service publication, addresses the long-term use of benzodiazepines, stating that the medical literature over the past decade has shown several risks that are present with long-term administration of these medications.  It advises that benzodiazepines are addictive substances that aggravate problems with substance abuse in many people and should be eliminated for patients who have been on them long-term.  Specifically, the newsletter advises that "[t]he chronic use of a benzodiazepine is indicated only in exceptional circumstances and should be carefully evaluated with regard to each individual's clinical situation."  Dkt. #24-2 at 2.  Only short-term use is recommended and only in limited

circumstances, including for alcohol withdrawal, agitated states of psychosis or mania, flying phobias (fear of flying), seizures, office procedures and spasticity.  Id.

With respect to anxiety disorder, the newsletter recommends against using benzodiazepines for more than two to four weeks.  Contraindications for the medication include:  concurrent use of another opioid, hypnotic, muscle relaxant or opioid; active or historical substance use disorder; and pregnancy and cardiopulmonary disorders.  The newsletter also cautions that long-term risks include a greater likelihood of death, dementia, falls, accidents and injuries.

## B.  Plaintiff's Medical History

Plaintiff says that he was diagnosed with panic disorder at the age of 17.  Although he has a history of substance abuse, he has been successfully treated for the past 20 years with benzodiazepines, including Lorazepam (Ativan), Clonazepam (Klonopin) and Alprazolam (Xanax).  Plaintiff says that he has not responded to treatment with antidepressants, BuSpar (buspirone), antipsychotics, hypertension medication, antihistamines, cognitive behavioral therapy, talk therapy, or any other medication besides benzodiazepines.

On May 11, 2009, Dr. Kenneth Robbins, M.D., M.P.H., provided an expert opinion in one of plaintiff's previous lawsuits in this court, Upthegrove v. Health Professionals, Ltd., et al., W.D. Wis. Case No. 07-cv- 596-bbc.  Dkt. #18-2.  In his report, Dr. Robbins stated that multiple psychiatrists had maintained plaintiff on Clonazepam despite his history of

substance abuse and overdosing on this medication because it is clear that the medication helps him.  He offered the opinion that removing the medication while plaintiff was in jail between January 2007 and April 2009 caused him to suffer more panic attacks.  Plaintiff made MMHI staff aware of Dr. Robbins's report after his admission to the facility.

Plaintiff also has submitted a 2013 article from The Oscher Journal on the therapeutic roles of benzodiazepines, including the successful use of Clonazepam for treating panic disorders.  Dkt. #18-4 at pp. 3, 5.


## C.  Plaintiff's Care at MMHI

Plaintiff was admitted to MMHI on June 16, 2020.  At the time of his admission, he was on Librium, a benzodiazepine used to treat acute anxiety, which was initially continued at MMHI.  On June 24, 2020, plaintiff spoke with defendant Angela Janis, his treating psychiatrist, and requested either a different benzodiazepine or a double dose of Librium for anxiety.  Dr. Janis recommended a goal of decreasing plaintiff's  benzodiazepine rather than increasing it.

On June 30, plaintiff requested Lorazepam, a different benzodiazepine, but Dr. Janis told plaintiff that she wanted to limit his long-term benzodiazepine use because of the risk associated with his history of polysubstance misuse and driving under the influence of alcohol.  Dr. Janis provided information to plaintiff about therapy for anxiety.  Initially, plaintiff stated that he had tried therapy but then denied he had done so.  Dr. Janis also discussed the fact that his previous medication trials, though numerous, were complicated

4

by significant substance use, and that some previous medications could be tried again in the absence of substance use.  Plaintiff was not interested in any medication change that did not involve increasing his benzodiazepine or adding Lorazepam.  Plaintiff reported that his substance use was not a concern because he had been convicted only twice for operating while intoxicated (OWI) and once for methamphetamine possession in the past 10 years.

After plaintiff left the intake unit at MMHI, Dr. Mark Phelps, a psychiatrist, began providing care to him.  On July 27, 2020, Dr. Phelps started plaintiff on 1 mg of Clonazepam twice daily.  According to plaintiff, that dose significantly reduced his anxiety and the frequency of his panic attacks.  Dr. Phelps reported discussing his concerns with plaintiff regarding the addiction potential of benzodiazepine and plaintiff's history of OWIs.  He pointed out that even though MMHI was a monitored environment, it would be better if some alternative medication combination could be found to address plaintiff's symptoms.  Dr. Phelps also discussed the possibility of addiction counseling.

Plaintiff was later transferred to the medium security unit within MMHI, where defendant Tyler Laws, a psychiatrist, began caring for him.  On September 10, 2020, Dr. Laws spoke with plaintiff about discontinuing the chronic benzodiazepine therapy because of his diagnosis of sleep apnea, tolerance, dependence, abuse potential, cognitive impairment potential and his long history of legal problems related to substance abuse.  Dr. Laws warned plaintiff that because of the likelihood that his Clonazepam would be reduced during his stay at MMHI, he would look at other anxiety and panic attack recovery options for plaintiff.  Plaintiff then requested a second opinion regarding his request to continue benzodiazepine

treatment for anxiety and to add Zolpidem (Ambien), which is a sleep aid that is potentially addictive, to his medication regimen for sleep.

Defendant Dr. Mitchell Illichmann, another MMHI psychiatrist, provided a second opinion to plaintiff in September 2020. Dr. Illichmann acknowledged in his report that plaintiff's previous outpatient providers seemed to have been aware of his six OWIs and continued to prescribe Alprazolam and Zolpidem; that Dr. Robbins held the opinion in 2009 that Clonazepam should have been continued when plaintiff was in jail despite his history of alcohol and drug abuse; and MMHI is a controlled environment in which misuse is highly unlikely. Dkt. #24-1 at 37. However, he stated that:

> [I]n summary, I think the substance use history including OWIs does make it reasonable to avoid zolpidem and even to consider taper of clonazepam before discharge as his [mandatory release] date is November 2021. At the same time, substance use histories are not an absolute contraindication to these medications as can be seen by the fact that they were recommended and prescribed in the community despite being aware of his substance use issues. Another approach would be to try to coordinate with who would be his county providers when he either gets conditional release or his sentence expires and see if they would find it reasonable to continue to prescribe such medications if in a controlled environment or close supervision of use – urine drug screens, short prescriptions, pill counts, etc.

Id.

On October 2, 2020, plaintiff was transferred to the medium security, treatment and rehabilitation unit at MMHI. Defendant Ann Heaslett took over plaintiff's care and reviewed the previous provider notes. She followed up on Dr. Illichmann's recommendation to coordinate with plaintiff's outpatient provider. Dr. Heaslett contacted Miriam Sward, APNP, whom plaintiff had seen prior to entering MMHI, to see whether Sward thought it

was reasonable to continue to prescribe plaintiff benzodiazepines and whether Sward would be comfortable prescribing them for plaintiff after he was discharged in the next year.  Sward had seen plaintiff in February 2020 and twice before that after taking over his care from another provider at her clinic.  Sward was aware of plaintiff's history of substance abuse and substance abuse-related legal problems and was dissatisfied with his medication regimen.  She disagreed with the prescription of benzodiazepines and stated that she would be very grateful if MMHI would be able to taper plaintiff's benzodiazepine in a controlled environment.  Sward also stated that she would strongly support not re-prescribing benzodiazepines in the community.

When Dr. Heaslett proposed a taper plan to plaintiff, he became angry.  Dr. Heaslett explained that she was not comfortable continuing the benzodiazepine as she did not believe it was in his best interest to do so.  Plaintiff was tapered off Clonazepam very slowly, from 1 mg twice daily to zero, between October 20 and December 22, 2020.  (On November 5, 2020, plaintiff asked for a slower taper (.25mg/month instead of .5mg/month), but Dr. Heaslett refused because his body was tolerating the reduction.  Dkt. #24-1 at 54-55.  She did offer to slow the progression of the taper starting on November 17, 2020.  Id.  When plaintiff refused to be treated with any medication on November 19, 2020, Dr. Heaslett ordered a more rapid but safe taper.  Id. at 53-54.)

During the two-month tapering process, plaintiff's hypertension (high blood pressure) worsened.  He was taken to the emergency room for high blood pressure after he complained of headaches and chest pains on November 23, 2020 and again on December 8, 2020.  Both

times, hospital staff ruled out a stroke or heart attack.

Plaintiff's primary care physician recommended that his high blood pressure be treated with an anti-hypertensive medication, but plaintiff disagreed and asked for a second opinion. Dr. Paul Bekx was consulted and ordered further lab work. He concurred with plaintiff's primary care physician that plaintiff should be treated with an anti-hypertensive medication. Plaintiff has refused the medication, and his blood pressure readings have continued to be high.

Hypertension related to withdrawal from Clonazepam is short-lived and typically resolves after tapering its use. It is highly unlikely with a very slow taper and is more often seen with rapid tapers or sudden discontinuation. Hypertension is not treated with benzodiazepines.

Plaintiff says that without benzodiazepines, he is having daily panic attacks and constant anxiety. In addition to non-addictive medication for his anxiety, plaintiff has been offered the opportunity to learn dialectical behavior therapy skills while at MMHI to shore up his coping skills for times when he feels anxious. Plaintiff refused these options, saying he already tried them in the community and none of them helped. He also is seen weekly for individual therapy for alcohol and other drug abuse.

At the preliminary pretrial conference held on March 5, 2021, the parties informed Magistrate Judge Stephen Crocker that plaintiff would be released from MMHI within about a month's time.

OPINION

Plaintiff seeks a court order (1) enjoining defendants from discontinuing his Clonazepam medication, and (2) appointing an outside psychiatrist to treat him. To win a preliminary injunction, a party must show that he (1) has some likelihood of success on the merits, (2) lacks any adequate remedy at law and (3) will suffer irreparable harm if a preliminary injunction is denied. American Civil Liberties Union of Illinois v. Alvarez, 679 F.3d 583, 589 (7th Cir. 2012). If the moving party makes this threshold showing, the court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." Id. The greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted. Sofinet v. Immigration and Naturalization Service, 188 F.3d 703, 707 (7th Cir. 1999).

I will address the individual factors separately.

### A.  Likelihood of Success on the Merits

A likelihood of success requires only a "better than negligible" chance of succeeding on the merits. Hoban v. Wexford Health Sources, Inc., 731 F. Appx. 530, 532 (7th Cir. 2018). To prevail on his Fourteenth Amendment claim, plaintiff must show that defendants' actions in failing to continue his Clonazepam have been "objectively unreasonable." Miranda v. County of Lake, 900 F.3d 335, 352-53 (7th Cir. 2018). The

9

analysis proceeds in two steps. <u>McCann v. Ogle County</u>, 909 F.3d 881, 886 (7th Cir. 2018). The first step focuses on the intentionality of the individual defendant's conduct and "asks whether the . . . defendant[] acted purposefully, knowingly, or perhaps even recklessly when [he] considered the consequences of [his] handling of [plaintiff's] case." <u>Id.</u> (citing <u>Miranda</u>, 900 F.3d at 353). A showing of negligence or even gross negligence will not suffice. <u>Id.</u> (explaining that "something akin to reckless disregard" is required). At the second step, courts apply an "objective reasonableness" standard, focusing on the totality of facts and circumstances faced by the defendant and gauging "objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." <u>Id.</u>

Plaintiff's medical records, the affidavit of MMHI Medical Director Rolli and the opinions offered by other medical providers asked to weigh in on plaintiff's care show that the decision to slowly taper plaintiff from benzodiazepines was not reckless or even unreasonable under the circumstances and prevailing norms discussed by the Wisconsin Department of Health. Benzodiazepines are highly addictive, and their use should be limited to a short-term basis. This is particularly true for someone like plaintiff, who has six OWIs and a history of substance abuse. In addition, numerous medical professionals, including plaintiff's outside treating provider, reviewed plaintiff's use of benzodiazepines and agreed that tapering him off the medication was an appropriate measure. Although plaintiff points to Dr. Robbins's expert opinion and his past providers' decisions to prescribe him benzodiazepines even with his history of substance abuse, plaintiff has not shown that defendants' disagreement with that course of treatment during his civil commitment was

10

such a significant "departure from accepted professional standards or practices" that it was objectively unreasonable.  Williams v. Patton, 761 Fed. Appx. 593, 597 (7th Cir. 2019) (addressing medical care claims under Fourteenth Amendment) (citing Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014); McCann, 909 F.3d at 887).

Although some providers have chosen to treat plaintiff's panic disorder and anxiety with benzodiazepines in the past, and there is some support in the medical literature for doing so, the risks associated with the medication are also proven and it is not the only acceptable treatment for plaintiff's condition.   Mere disagreement with a medical professional's otherwise reasonable treatment is not a basis for a constitutional claim.  Id. (citing Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)).

Plaintiff's MMHI doctors slowly and safely tapered his use of benzodiazepines over the course of two months and even responded to his requests to first accelerate and then slow the taper.  Although plaintiff's blood pressure rose during this period, which resulted in his being sent to the emergency room on two occasions, no abnormalities were discovered. In addition, the evidence in the record shows that hypertension related to withdrawal from Clonazepam is short-lived and is more often seen with rapid tapers or sudden discontinuation versus a slow taper.   In any event, hypertension is not treated with benzodiazepines.   Plaintiff's treating physicians recommended an anti-hypertensive medication, but plaintiff has declined to take it.   Additionally, defendants have offered plaintiff non-addictive medication and the opportunity to learn coping skills for his anxiety, which he has also declined.  Although plaintiff says that all of these measures have been

ineffective in the past, no evidence suggests that these suggested treatments were a significant departure from professional norms.   Taking into consideration all of this evidence, it is unlikely that plaintiff will succeed on the merits of his case.


B.  <u>Remedy at Law and Irreparable Harm</u>

The second and third threshold questions in the injunction analysis are whether plaintiff could achieve an adequate remedy without an injunction and whether he would suffer irreparable harm.   Plaintiff has alleged that he suffers from daily panic attacks and anxiety that cause him numerous symptoms that interfere with his daily living.   Although money damages could compensate plaintiff for any pain and suffering he is forced to endure, courts have found that untreated pain may qualify as an irreparable injury.   <u>Wheeler v. Wexford Health Sources, Inc.</u>, 689 F.3d 680, 682 (7th Cir. 2012) ("A prisoner's view of optimal medical treatment can be a weak ground for superseding the views of competent physicians, but prisoners are not invariably wrong. Judges regularly must decide whether physicians have ignored a serious medical problem."); <u>Bentz v. Ghosh</u>, 718 Fed. Appx. 413, 420 (7th Cir. 2017) (official's refusal to treat pain that affects prisoner's daily living may be irreparable harm).   However, the record in this case shows that defendants have not ignored plaintiff's panic attacks and anxiety or left him without any treatment options.   Moreover, plaintiff will be released from MMHI within the next month.   Even if plaintiff will continue to suffer panic attacks and other symptoms in the absence of a benzodiazepine medication, defendants' control over his psychiatric care will end shortly and plaintiff will be able to seek

the care he believes he needs in the community.  <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 22 (2008) (plaintiff seeking preliminary relief must demonstrate that irreparable injury is likely in absence of injunction).

## C.  <u>Balance of Harms</u>

Because plaintiff has failed to satisfy the threshold requirement of likelihood of success on the merits, it is unnecessary to consider the remaining question regarding the balance of harms in the injunction analysis.  However, it is worth noting that medical care claims are difficult to prove, and plaintiff has not adduced any evidence that defendants consciously disregarded his suffering and did so for *no* legitimate reason.  Defendants had medical reasons for deciding to taper plaintiff off Clonazepam that were supported by his outside provider.  Although plaintiff is civilly committed in a mental health institution and not incarcerated, the Supreme Court has instructed courts undertaking the injunction analysis to "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained."  <u>Kingsley v. Hendrickson</u>, 576 U.S. 389, 397 (2015) (applying objective unreasonableness standard in jail setting).  In addition, "mandatory preliminary injunctions—those requiring an affirmative act by the defendants—are "cautiously viewed and sparingly issued," <u>Mays v. Dart</u>, 974 F.3d 810, 818 (7th Cir. 2020) (citing <u>Graham v. Medical Mutual of Ohio</u>, 130 F.3d 293, 295 (7th Cir. 1997)).  In light of plaintiff's unlikely chance of success on the merits, his impending release from MMHI and the courts' general reluctance to interfere with medical treatment and issue

13

mandatory preliminary injunctions, the balance of harms favors defendants in this case.  Id.
("This balancing process involves a 'sliding scale' approach:  the more likely the plaintiff is
to win on the merits, the less the balance of harms needs to weigh in his favor, and vice
versa.").

Accordingly, plaintiff's motions for preliminary injunctive release will be denied.


ORDER

IT IS ORDERED that plaintiff James Upthegrove's motions for preliminary injunctive

relief, dkt. ##9, 13 and 15, are DENIED.

Entered this 10th day of March, 2021.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

14